JOINER, Judge.
Carlen Demetricke Miller appeals the circuit court's order revoking his probation. On July 14, 2016, Miller pleaded guilty to unlawful possession or receipt of a controlled substance, see § 13A-12-212, Ala. Code 1975. He was initially sentenced to 97 months' imprisonment; that sentence *922 was suspended, however, and he was ordered to serve 3 years' probation. Miller did not appeal his conviction and sentence.
Facts and Procedural History
On January 10, 2018, Miller's probation officer, Eddie Gamble, filed a delinquency report alleging that Miller had violated the terms and conditions of his probation. Specifically, the report alleged that Miller had: (1) committed the new offense of first-degree arson,[1] see § 13A-7-41, Ala. Code 1975; (2) committed the new offense of third-degree criminal trespassing, see § 13A-7-4, Ala. Code 1975; (3) committed the new offense of failure to obey a police officer, see § 32-5A-4, Ala. Code 1975; and (4) committed the new offense of disorderly conduct, see § 13A-11-7, Ala. Code 1975. The report also alleged that Miller had failed to make regular payments toward his court-ordered fees and his monthly supervision fees. As a result of the report, Miller was arrested.
On January 16, 2018, Miller appeared in the Mobile Circuit Court. At that time, he was notified of the allegations against him and that the State was moving to revoke his probation. That same day, the court appointed Lee Hale, Jr., to represent Miller during his probation-revocation proceedings.
On January 31, 2018, the circuit court conducted a probation-revocation hearing at which Miller was present and represented by counsel. During that hearing, the court heard testimony from Raven Harris and Miller's probation officer, Eddie Gamble.
Harris, Miller's cousin, testified as a hostile witness. Harris stated that, on November 11, 2017, she gave a written statement to law-enforcement officers in which she stated that, earlier that morning, her son had woken her up, screaming that there was a fire, and told her that he had seen Miller walk up the ramp to their mobile home, pour gasoline on the ramp, and then set the ramp on fire. Harris and her son fled the mobile home and called emergency 911.
She further testified that she told investigators what her son had told her. She also told them that Miller had visited her home earlier that day, that he had been drunk, and that she and Miller got into an argument over some work that he had done for her and that Miller left her home upset.
While on the stand, Harris stated that she wished to recant the statement that she had given to law-enforcement officers back in November 2017. According to Harris, the statement she gave was a "misunderstanding," and she just wanted the charges dropped so that she could "go on with [her] life." (R. 15.) Specifically, Harris said that her son had since told her that he did not see Miller set fire to the ramp that night. Harris stated that she wanted to testify at the hearing so that she could clear up the mistake her son had made. When questioned by the court about who else was at the mobile home the night of the fire, Harris stated that no one else had been there that day.
Next, Miller's probation officer, Eddie Gamble, testified that he filed a delinquency report after he received information that Miller had committed arson. He further testified that he had learned from law-enforcement officers that the fire at Harris's mobile home had been intentionally set. Finally, he stated that Miller was aware of the terms and conditions of his probation and that Miller knew that his probation would be revoked if he committed any new offenses. After Harris and Officer Gamble testified, the circuit court then concluded the hearing and, at the *923 request of the State, scheduled an additional hearing on February 15, 2018, to hear testimony from another State witness.
At the second hearing on February 15, 2018, the State moved to withdraw all the charges against Miller with the exception of the first-degree-arson charge. That motion was granted. The State also offered testimony from Terry Sexton, an officer with the Mobile Fire Department's fire investigation unit.
Officer Sexton testified that, on November 11, 2017, he was asked to investigate a possible arson at Harris's residence. Upon arriving at the scene that day, he spoke with Harris and received a written statement from her but did not speak to her six-year-old son. Officer Sexton confirmed that, in that initial statement, Harris stated that Miller had previously been at her house that day performing yard work, that he had been drinking, and that they eventually began arguing over the amount of work done and money issues. Later, she was awakened by her son who was screaming that there was a fire, and he identified Miller as the one who started it. According to Officer Sexton, Harris told him that, after her son told her what he saw, she noticed Miller walking away from her mobile home and getting into his pickup truck. She then provided Officer Sexton with a description of Miller's truck. Based on her statement, Officer Sexton tracked down Miller.
Miller did not offer any evidence or testimony in his defense. The circuit court concluded the hearing by stating it was reasonably satisfied that Miller had committed the first-degree-arson offense. On February 16, 2018, the court issued an order reflecting its findings. It withheld deciding whether to revoke Miller's probation, however, until February 27, 2018.
That day, the court revoked Miller's probation and ordered him to serve the remainder of his original prison sentence, with credit for time served. The court also noted that, since the revocation hearing on February 15, 2018, the district court had issued an order following its preliminary hearing indicating that it had not found probable cause in the arson case against Miller. On February 28, 2018, the circuit court issued an order reflecting its decision.
On April 18, 2018, Miller filed a motion to reconsider. That motion was denied. Thereafter, Miller filed a timely notice of appeal.
Discussion
Miller argues, among other things, that the State's evidence was insufficient for the circuit court to be reasonably satisfied that he had violated the terms and conditions of his probation. (Miller's brief, pp. 15-22.) Specifically, he argues that the State's evidence against him consisted only of inadmissible hearsay. (Miller's brief, pp. 16-19.) According to Miller, the State's evidence against him consisted primarily of the testimony and written statement given by Harris detailing what her six-year-old son had told her about seeing Miller set the fire that destroyed her mobile home. (Miller's brief, p. 17, 18.) Miller contends that, because this evidence was hearsay and was the only evidence presented by the State that actually placed him at the scene the night of the fire, his probation should not have been revoked. (Miller's brief, pp. 18-19.) We agree.
It is well settled that
" ' "[p]robation or suspension of sentence comes as an act of grace to one convicted of, or pleading guilty to, a crime. A proceeding to revoke probation is not a criminal prosecution, and we have no statute requiring a formal trial. Upon a hearing of this character, the court is not bound by strict rules of evidence, and the alleged violation *924 of a valid condition of probation need not be proven beyond a reasonable doubt." '
" Martin v. State, 46 Ala. App. 310, 312, 241 So.2d 339, 341 (Ala. Crim. App. 1970) (quoting State v. Duncan, 270 N.C. 241, 154 S.E.2d 53 (1967) (citation omitted) ). Under that standard, the trial court need 'only be reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.' Armstrong v. State, 294 Ala. 100, 103, 312 So.2d 620, 623 (1975). Absent a clear abuse of discretion, a reviewing court will not disturb the trial court's conclusions. See Moore v. State, 432 So.2d 552, 553 (Ala. Crim. App. 1983), and Wright v. State, 349 So.2d 124, 125 (Ala. Crim. App. 1977)."
Ex parte J.J.D., 778 So.2d 240, 242 (Ala. 2000). In Alabama, "the law is clear that the formality and evidentiary standards of a criminal trial are not required in parole revocation hearings." Puckett v. State, 680 So.2d 980, 981-82 (Ala. Crim. App. 1996) (internal quotation marks and citations omitted). A revocation proceeding is "a bench trial and the trial court is the sole fact finder." Ex parte Abrams, 3 So.3d 819, 823 (Ala. 2008). " 'It is not necessary in a probation revocation hearing to provide proof beyond a reasonable doubt or by a preponderance of the evidence. Rather, the lower court need only be "reasonably satisfied from the evidence that the probationer has violated the conditions of his probation." ' " Puckett, 680 So.2d at 982.
With regard to the admissibility of hearsay evidence at a probation-revocation hearing, this Court has previously stated that such evidence may be admitted at the discretion of the circuit court. See id. at 981-82. It is well settled, however, that
" 'hearsay evidence may not form the sole basis for revoking an individual's probation. See Clayton v. State, 669 So. 2d 220, 222 (Ala. Cr. App. 1995) ; Chasteen v. State, 652 So.2d 319, 320 (Ala. Cr. App. 1994) ; and Mallette v. State, 572 So.2d 1316, 1317 (Ala. Cr. App. 1990). 'The use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating information that forms the basis of the revocation.' Clayton, 669 So.2d at 222."
Goodgain v. State, 755 So.2d 591, 592 (Ala. Crim. App. 1999).
Under the Alabama Rules of Evidence, hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), Ala. R. Evid. Although hearsay is generally inadmissible under the Alabama Rules of Evidence, there are some exemptions or exceptions to this general rule. See, e.g., Rules 802 and 803, Ala. R. Evid.
On appeal, Miller contends that the only evidence that he committed arson was Harris's testimony regarding the hearsay statements her six-year-old son had made to her about seeing Miller set the fire that destroyed her mobile home. During Miller's probation-revocation hearing, Harris's son did not testify. Harris stated on the record, however, that her son had since changed his account of what happened that night and that she wanted to recant the statement she gave to law-enforcement officers that night.
In its appellate brief, the State contends that it offered nonhearsay testimony to support the arson charge against Miller through Harris's testimony about Miller's being at her home earlier that day. (State's brief, pp. 16-17.) Specifically, the State points out that Officer Sexton corroborated Harris's testimony. Id. We note, however, that Officer Sexton's testimony was hearsay because it did nothing more than relay the same hearsay statements made *925 by Harris. Although we acknowledge that Harris did provide some nonhearsay testimony that placed Miller at the house earlier that day, that testimony is insufficient to connect Miller to the arson. Under these circumstances, the State failed to present any nonhearsay evidence indicating that Miller had, in fact, committed the alleged arson. Cf. Ex parte Dunn, 163 So.3d 1003 (Ala. 2014) (reversing revocation of probation where no nonhearsay evidence corroborated the hearsay evidence linking the probationer to the alleged new offense that served as the basis for the revocation of his probation). Thus, the circuit court erred by revoking Miller's probation.[2]
Conclusion
Accordingly, the circuit court's order revoking Miller's probation is reversed, and Miller's case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Welch, Kellum, and Burke, JJ., concur. Windom, P.J., recuses herself.

A preliminary hearing was held in the district court as to the arson offense.

Our resolution of this issue pretermits any need for deciding the remaining issues that Miller raises on appeal.