Rel: December 15, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

———————————————

## CR-2023-0338

———————————————

## Markis Antwuan Watts

## v.

## State of Alabama

## Appeal from Lee Circuit Court
## (CC-21-90.70)

COLE, Judge.

Markis Antwuan Watts appeals the Lee Circuit Court's judgment revoking his probation for having committed two new criminal offenses -- namely, discharging a firearm into an occupied vehicle, a violation of § 13A-11-61(b), Ala. Code 1975, and first-degree assault, a violation of §

13A-6-20, Ala. Code 1975. On appeal, Watts argues that the circuit court erred when it revoked his probation because, he says, "the State failed to present sufficient nonhearsay evidence connecting Watts to the alleged violation of his probation." (Watts's brief, p. 7.) The State concedes that the "vast majority of [its] evidence was comprised of hearsay," and it admits that "the nonhearsay evidence by itself does not prove that Watts committed those offenses," but it argues that this Court should affirm the circuit court's judgment because the nonhearsay evidence was "sufficient to connect" Watts to the new offenses. (State's brief, pp. 16-17.) We agree with Watts.

<u>Facts and Procedural History</u>

On April 28, 2021, Watts pleaded guilty to first-degree promoting prison contraband, a violation of § 13A-10-36, Ala. Code 1975. The circuit court sentenced Watts to 15 years' imprisonment, split to serve 1 year imprisonment followed by 2 years of probation. (C. 4.) While he was on probation, a warrant was issued for Watts's arrest because he had allegedly violated his probation. (C. 5-6.) On March 3, 2023, Watts was arrested on the warrant, and he was given notice that he was alleged to have violated his probation by committing the offenses of discharging a

firearm into an occupied vehicle and first-degree assault. (C. 8.) The circuit court set Watts's probation-revocation hearing for May 3, 2023.

At the revocation hearing, Watts, who was represented by counsel, denied the allegations that he had committed the two new offenses. (R. 2.) Thereafter, the State presented evidence from one witness, Det. Timothy Huffman of the Montgomery Police Department, to prove its claim that Watts had violated his probation.

Det. Huffman's testimony established the following: On November 3, 2022, he was assigned to investigate a shooting that had occurred on Winona Avenue in Montgomery, in which "Mr. Kennebrew"[1] was shot in the left eye while sitting in his car in front of Brittney Fuller's home. (R. 7-8.) According to Det. Huffman, the shooting occurred at around 5:00 a.m. Det. Stewart[2] was the first officer to respond to the scene, and he also went to the hospital to talk to Kennebrew and Fuller. (R. 8.) Det. Huffman said that, when he responded to the scene of the shooting, he collected three 9 mm shell casings near where Kennebrew had been parked. Fuller, who was Watts's ex-girlfriend, was taken to the detective

---

[1]Kennebrew's first name does not appear in the record on appeal.

[2]Det. Stewart's first name does not appear in the record on appeal.

3

division of the Montgomery Police Department for questioning. According to Det. Huffman, Fuller witnessed the shooting and told him the following:

> "She stated that Mr. Watts -- earlier that morning between two and three in the morning, Mr. Watts kept sending her text messages and actually calling her, actually trying to get in her house, but she stated that she didn't want him in her residence. And then she said apparently he just showed up to her house banging on the front causing her blinds to fall down and her to see him. She told him that she was not going to let him in; she stated that he -- he stated that he was going to kick in her front door, shoot through her house and crash out on her."

(R. 12.) Fuller also told him that Watts had come to her house in a "black Lincoln vehicle" but had eventually left. Fuller said that, while she was interacting with Watts, she was also on the telephone with Kennebrew. (C. 12-13.) Fuller then told Det. Huffman:

> "After that, she stated that [Watts] actually left and she continued on the phone with [Kennebrew]. She stated that she told [Kennebrew], hey, look; don't come over here right now because, you know, he is making threats. So then she stated that the victim, which is Mr. Kennebrew, he pulled up in his vehicle, actually on the same street, but actually on the side of the street. Her house is on the other side.
>
> "So he parked on the other side of the street. And he just waited there for like three seconds and then he pulled off. When he pulled off, he saw the black Lincoln car come back to the residence. And he stated that he circled [the] block, and

4

when he came back, he stated that the Lincoln Town Car was gone from the residence. So that's when he parked on the side.

"Now, as far as Ms. Fuller, she stated that she saw Mr. Kennebrew parked on the side of the street and then she saw the black Lincoln Town Car that Mr. Watts was driving come back and pull beside her residence. She stated that Mr. Watts got out -- got out on the passenger's side of the Lincoln and she stated that a white U-Haul pulled up in between the black Lincoln Town Car. You have the black Lincoln Town Car, you have the white U-Haul truck, and then you have the victim's vehicle parked. She stated that Mr. Watts got out of the car and was talking to somebody in the truck, and then she stated that she told the driver to unlock the back driver's side door. She stated that once he got to the driver's side door, he opened it.

"The white U-Haul truck pulled off and she stated[] that she actually saw Mr. Watts hanging out of the back passenger's side of the Lincoln Town Car shooting at Mr. Kennebrew's vehicle and then actually pulling off from Winona Avenue to -- that's Federal Drive, and then that's when she ran outside to see the victim, Mr. Kennebrew, and that's when they went to the hospital."

(R. 14-15.) Det. Huffman said that Fuller also identified Watts as the shooter in a photo lineup that he had prepared for her. (R. 23.)

Det. Huffman said that the physical evidence that he collected at the scene corroborated Fuller's account of what she said had happened. Additionally, Det. Huffman said that he saw the bullet holes in Kennebrew's windshield and that he viewed the text messages that Fuller said were sent by Watts. However, Det. Huffman did not testify

5

about the content of those text messages other than stating that Watts and Fuller were "arguing back and forth." (R. 24.)

Det. Huffman testified that, on November 14, 2022, the United States Marshals Service apprehended Watts at the Red Lyons Apartments in Montgomery. At that time, Watts was served with the arrest warrants for discharging a firearm into an occupied vehicle and first-degree assault. (R. 17.) Det. Huffman said that he searched the black Mercedes vehicle that Watts was driving the day he was apprehended, but he found no firearms. (R. 17.) Det. Huffman said that, after he advised Watts of his Miranda[3] rights, Watts exercised his right to remain silent.

On cross-examination, the following exchange occurred between Det. Huffman and Watts's counsel:

> "[Watts's counsel]: Okay. The testimony that you're giving today that would identify Mr. Watts as the person who was there who did this is based on statements that other people have told you; correct?
>
> "[Det. Huffman]: Yes.
>
> "[Watts's counsel]: The bullets, for instance, did you go out and find those casings yourself?

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

6

"[Det. Huffman]:  Yes.

"[Watts's counsel]:  Okay.  And there is nothing about -- you haven't done anything about those casings, testing or anything, that would independently tell you that those casings belonged to Mr. Watts?

"[Det. Huffman]:  Correct.

"[Watts's counsel]:  Okay.  So any information that you have given the Judge that would identify Mr. Watts as the person who was there, the person who shot this firearm is based on statements that other people have told you?

"[Det. Huffman]:  That's it.  Just based on other -- just based on Ms. Fuller and Mr. Kennebrew.  Also I did -- I think I did a photo [template] of Mr. Watts or -- I think I did a photo [template] for a lineup with Mr. Watts in which Ms. Fuller identified him actually as the one who was shooting.

"....

"[Watts's counsel]:  And you witnessed her identify him in the six pack, but once again, --

"....

"[Watts's counsel]:  -- you're telling us based on what someone else indicated to you?

"[Det. Huffman]:  Correct."

(R. 22-23.)

At the close of the evidence, Watts argued that the evidence was insufficient to revoke his probation for committing the two new offenses

7

of discharging a firearm into an occupied vehicle and first-degree assault because, he said, "the only evidence that we have before us today that Mr. Watts is the person who fired that weapon[] is hearsay testimony. We don't have any substantive evidence that he is the person that fired that weapon." (R. 27-28.) The circuit court rejected Watts's argument, explaining:

> "And part -- part of what is -- was hearsay, but there was also -- the bullet casings were found consistent and corroborating the witnesses' testimony and the photo lineup identifying [Watts]. Although, it was her -- he was there for the identification of the witness. And the text messages also corroborated.
>
> Although, they might be considered hearsay or they are, in fact, hearsay. But he reviewed the text messages that were consistent with [Watts's] being there. So it corroborated -- it's not the uncorroborated testimony of one person. It's corroborated by those facts."

(R. 28.)

Thereafter, the circuit court revoked Watts's probation, finding that it was reasonably satisfied that Watts had violated his probation by committing two new offenses. (R. 30-31.) The circuit court memorialized its decision in a written order. (C. 12.) This appeal follows.

Discussion

On appeal, Watts argues that the State's evidence was insufficient to revoke his probation for committing two new offenses because, he says, there was no nonhearsay evidence presented at the revocation hearing that connected him to the crimes. As noted above, the State acknowledges the dearth of nonhearsay evidence presented at Watts's revocation hearing but asserts that the nonhearsay evidence that was presented was sufficient to connect Watts to the new offenses.

In Walker v. State, 294 So. 3d 825 (Ala. Crim. App. 2019), this Court addressed what must be shown to revoke a person's probation when, as is the case here, the evidence presented at a probation-revocation hearing consists of a mixture of hearsay and nonhearsay evidence:

> "To determine whether the evidence presented at a probation-revocation hearing is sufficient to revoke a defendant's probation for committing a new offense, the Alabama Supreme Court has set out the following standard:
>
> > "'"'"Probation or suspension of sentence comes as an act of grace to one convicted of, or pleading guilty to, a crime. A proceeding to revoke probation is not a criminal prosecution, and we have no statute requiring a formal

9

trial. Upon a hearing of this character, the court is not bound by strict rules of evidence, and the alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt."'"

"'"Martin v. State, 46 Ala. App. 310, 312, 241 So. 2d 339, 341 (Ala. Crim. App. 1970) (quoting State v. Duncan, 270 N.C. 241, 154 S.E.2d 53 (1967) (citation omitted)). Under that standard, the trial court need 'only be reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.' Armstrong v. State, 294 Ala. 100, 103, 312 So. 2d 620, 623 (1975). Absent a clear abuse of discretion, a reviewing court will not disturb the trial court's conclusions. See Moore v. State, 432 So. 2d 552, 553 (Ala. Crim. App. 1983), and Wright v. State, 349 So. 2d 124, 125 (Ala. Crim. App. 1977)."

"'Ex parte J.J.D., 778 So. 2d [240] at 242 [(Ala. 2000)]. See Rule 27.6(d)(1), Ala. R. Crim. P. (providing that at a revocation hearing the "court may receive any reliable, relevant evidence not legally privileged, including hearsay," and the court must be reasonably satisfied from the evidence that a violation of probation occurred before revoking probation). Whether to admit hearsay evidence at a probation-revocation hearing is within the discretion of the court.

10

Puckett v. State, 680 So. 2d 980, 981 (Ala. Crim. App. 1996). However,

> "'"[i]t is well settled that hearsay evidence may not form the sole basis for revoking an individual's probation. See Clayton v. State, 669 So. 2d 220, 222 (Ala. Cr. App. 1995); Chasteen v. State, 652 So. 2d 319, 320 (Ala. Cr. App. 1994); and Mallette v. State, 572 So. 2d 1316, 1317 (Ala. Cr. App. 1990). 'The use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating the information that forms the basis of the revocation.' Clayton, 669 So. 2d at 222."

"'Goodgain v. State, 755 So. 2d 591, 592 (Ala. Crim. App. 1999).

"'To summarize, at a probation-revocation hearing a circuit court must examine the facts and circumstances supporting each alleged violation of probation. The court may consider both hearsay and nonhearsay evidence in making its determination. The hearsay evidence, however, must be reliable,[2] and it cannot be the sole evidence supporting the revocation of probation. Thus, a circuit court must assess the credibility of the particular witnesses at the probation-revocation hearing, the reliability of the available evidence, and the totality of the evidence in each individual case to determine whether it is reasonably satisfied that the probationer has violated a term of his or her probation and that revocation is proper. Moreover, an appellate court

11

will disturb a circuit court's decision only if the record establishes that the circuit court exceeded the scope of its discretion.

"'_____

"'[2]Cf. Hampton v. State, 203 P.3d 179, 185 (Okla. Crim. App. 2009) ("[W]e conclude that the due process confrontation requirement applicable to revocation[] matters will generally be satisfied when a trial court determines that proffered hearsay bears substantial guarantees of trustworthiness or otherwise has sufficient indicia of reliability.").'

"Sams v. State, 48 So. 3d 665, 667-68 (Ala. 2010).

"Recently, in Ex parte Dunn, 163 So. 3d 1003 (Ala. 2014), the Supreme Court refined this standard, explaining that, when the State presents a mixture of hearsay and nonhearsay evidence to show that a defendant violated his probation by committing a new offense, the circuit court cannot revoke a defendant's probation for that violation unless the nonhearsay evidence connects the defendant to the alleged offense. In that case, the Supreme Court reversed this Court's decision upholding the circuit court's revocation of Dunn's probation for committing a new offense because 'the State [had] not corroborated by nonhearsay evidence the hearsay evidence connecting the pants, and by extension Dunn, to the burglary.' 163 So. 3d at 1006. See also Wright v. State, 292 So. 3d 1136, 1139 (Ala. Crim. App. 2019) (reversing the circuit court's revocation of Wright's probation for committing a new offense because the nonhearsay evidence that Wright was merely present at a party at the time a shooting occurred did not sufficiently connect him to the alleged murder); and Miller v. State, 273 So. 3d 921, 925 (Ala. Crim. App. 2018) (reversing the circuit court's revocation of Miller's probation because 'the State failed to present any

12

nonhearsay evidence indicating that Miller had, in fact, committed the alleged arson').

"In sum, Sams and Dunn establish that hearsay is admissible at a probation-revocation hearing to show that a defendant committed a new offense and that the circuit court can rely on hearsay to revoke a defendant's probation. But those cases warn that hearsay cannot serve as the sole basis for revoking a defendant's probation, and instruct that, although the State does not have to prove every element of the alleged new offense with nonhearsay evidence, the State must present sufficient nonhearsay evidence connecting the defendant to the commission of the alleged new offense."

294 So. 3d at 831-32 (footnote omitted). Having set out the appropriate standard under which to review this case, we now consider whether the circuit court properly revoked Watts's probation for committing the new offenses of discharging a firearm into an occupied vehicle and first-degree assault.

There is no question that the State's evidence (both hearsay and nonhearsay) was sufficient to establish that, on November 3, 2022, a firearm was discharged into a vehicle occupied by Kennebrew, see § 13A-11-61, and that Kennebrew was a victim of a first-degree assault, see § 13A-6-20. What we must resolve here, however, is not whether the State presented sufficient evidence that those offenses had been committed,

but whether the State presented sufficient nonhearsay evidence to establish that Watts is the individual who committed the offenses.

Here, the only nonhearsay evidence the State presented at Watts's probation-revocation hearing was Det. Huffman's testimony that he collected 9 mm shell casings from the crime scene, that he saw bullet holes in Kennebrew's windshield, that he saw Kennebrew's injury, that he found nothing when he searched Watts's vehicle, and that Watts exercised his right to remain silent when Det. Huffman attempted to question him. Although the circuit court correctly found that this nonhearsay testimony "corroborated" the hearsay testimony that Kennebrew was shot while he sat in his car outside of Fuller's home, this nonhearsay evidence does not connect Watts to those crimes. Thus, the evidence presented at Watts's probation-revocation hearing was insufficient to revoke Watts's probation.

## Conclusion

Because the State failed to present sufficient nonhearsay evidence connecting Watts to the alleged violations of his probation, the circuit court erred in revoking his probation. Accordingly, this Court reverses

14

the circuit court's judgment revoking Watts's probation and remands this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Kellum, McCool, and Minor, JJ., concur.