Rel: October 4, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

## SC-2023-0884

_____

## Ex parte Larry Edward Nesbitt

## PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS

## (In re: Larry Edward Nesbitt

## v.

## State of Alabama)

## (Montgomery Circuit Court: CC-17-162; Court of Criminal Appeals: CR-2023-0478)

PER CURIAM.

Larry Edward Nesbitt petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals' decision in Nesbitt v. State (No. CR-2023-0478, Oct. 27, 2023), ___ So. 3d ___ (Ala. Crim. App. 2023)(table), a 3-2 decision affirming the Montgomery Circuit Court's revocation of Nesbitt's probation based on the circuit court's finding that it was reasonably satisfied from the evidence presented by the State that Nesbitt had committed the new criminal offense of discharging a firearm into an occupied building. We granted certiorari review to consider with the Court of Criminal Appeals' decision is in conflict with Ex parte Dunn, 163 So. 3d 1003 (Ala. 2014); we conclude that it is. As a result, we reverse the Court of Criminals Appeals' decision and remand this cause to the Court of Criminal Appeals to remand the cause to the circuit court for proceedings consistent with this opinion.

## Facts and Procedural History

In December 2017, Nesbitt pleaded guilty to one count of second-degree assault. The circuit court sentenced Nesbitt to 15 years of imprisonment, split to serve 2 years of imprisonment followed by 3 years of supervised probation. On May 24, 2022, the circuit court entered a

release order directing that Nesbitt be released from the detention facility he was being held in and that he "immediately report to [a] probation officer."

In November 2022, while Nesbitt was on probation, his probation officer, Officer Jermaine Pena, filed a delinquency report alleging that Nesbitt had violated the terms and conditions of his probation by committing the new criminal offense of domestic violence in the third degree (criminal mischief). Subsequently, in March 2023, Officer Pena filed a second delinquency report alleging that Nesbitt had again violated the terms and conditions of his probation by committing the new criminal offense of discharging a firearm into an occupied building.

On April 17, 2023, and May 11, 2023, the circuit court conducted a probation-revocation hearing at which Nesbitt was present and represented by counsel. Officer Pena was called by the State to testify. Officer Pena testified that the terms and conditions of Nesbitt's probation had been explained to Nesbitt and that he had signed a form acknowledging that he understood the terms and conditions of his probation; the form was admitted into evidence at the hearing. Officer Pena testified that Nesbitt had been charged with violating his probation

3

by committing the new offenses of third-degree domestic violence (criminal mischief) and discharging a firearm into an occupied building. Officer Pena further testified that he had no personal knowledge about the facts and circumstances of those charges.

The State also called as a witness Detective B. Truss of the Montgomery Police Department. Detective Truss confirmed that he had been "involved in an investigation of … Nesbitt for discharging a gun into an occupied building … on March [28, 2023]." Detective Truss testified that, on March 28, 2023, Terry Murrell had reported via telephone to the Montgomery Police Department "that his house [had been] shot into about twelve o'clock that afternoon while his teenage sons[, who were 16 and 17 years old, respectively,] occupied the residence." Detective Truss testified that Murrell had told him that "he believe[d] that one of his sons possibly ha[d] some kind of issue with [Nesbitt]"; Murrell's son declined to give a statement to Det. Truss. Detective Truss testified that, later that same day, Murrell had come to the Montgomery Police Department and had expressed his desire to press charges against the person who had discharged a firearm into his residence. Detective Truss testified that he had then interviewed Murrell.

Detective Truss further testified that, following his interview of Murrell, he had gone to the crime scene to investigate. Detective Truss testified that, during the course of his investigation, he personally had observed "several bullet holes in the exterior walls of [Murrell's] residence going into the house and into his bedroom." Detective Truss also testified that he had "canvassed the backyard area and … was able to locate about six spent shell casings," which he had determined were nine-millimeter shell casings, from "the far back corner of the backyard on the fence line." Detective Truss testified that some of the shell casings "were in Mr. Murrell's backyard, and then some [were] over the fence in his neighbor's backyard. But they were both in the back far corner."

Detective Truss testified that he had also interviewed Murrell's neighbor, Clinton Drake, in whose yard Det. Truss had observed some of the shell casings. Detective Truss testified that Drake had told him that Drake had "witnessed [Nesbitt] in [Drake's] backyard immediately after the shooting." Detective Truss testified that Drake had told him that Drake had not witnessed Nesbitt discharge a firearm but had "heard the shooting, came outside, and then … saw [Nesbitt] standing in his backyard with a handgun." Detective Truss testified that Drake had told

him that Drake "knew [Nesbitt] from the neighborhood" and that Drake had "known [Nesbitt] for several years." Detective Truss testified that he had shown Drake a picture of Nesbitt "just to make sure we were talking about the same person …." Detective Truss testified that Drake had indicated that the person in the picture that Det. Truss had shown to Drake was Nesbitt.

Detective Truss testified that on the next day, March 29, 2023, he had returned to Murrell's house and that Murrell had told Det. Truss that Murrell had "heard that [Nesbitt] was around the corner …." Detective Truss testified that he had driven "around the corner and … observed [Nesbitt] standing on the corner." Detective Truss testified that he had "called a patrol unit to [his] area so [they] could attempt to get [Nesbitt] into custody." Detective Truss testified that, as Det. Truss and the backup officer approached Nesbitt, Nesbitt had run away from them "on foot." Detective Truss testified that they had pursued Nesbitt and had been able to take him into custody.

Detective Truss testified that, once he was in custody, Nesbitt had given a statement to Det. Truss. Detective Truss testified that Nesbitt had initially "claimed that he was at work all day. So he denied the

6

shooting, claimed that he was at work, he wasn't even in the area" of

Murrell's house. However, "[a]bout halfway through the interview," Det.

Truss testified, Nesbitt had

> "recanted that statement and he said that he was actually in the neighborhood on Berwyn [Street]. And he said that he heard the shooting take place, and at that point he jumped in the car with a friend and then they rode around to the area where it happened to check on family members."

Detective Truss testified that, following the interview with Nesbitt, he

had secured a "warrant against [Nesbitt] for discharging a firearm into

an occupied residence."

Nesbitt, after being warned by the circuit court that "anything you

say can be used against you," made a statement in his defense at the

hearing. Among other things, Nesbitt stated:

> "This 16, 17 year old, they know what's going on. They know when you don't pay drug debts or you don't pay this, people shoot your house up. That occur. But Nesbitt didn't do it.
>
> "And you know my database. You got my whole history in that computer on a database and how I do."

On May 30, 2023, the circuit court entered an order revoking

Nesbitt's probation and ordering him "to serve the 2 year split portion of

his sentence …." The circuit court relied upon the following facts in its

order:

"Detective Truss with the Montgomery Police Department provided testimony that he investigated a report that a home located within the City of Montgomery was shot into while occupied by the homeowner's teenage sons. Upon arriving at the alleged victim's home, Detective Truss located 6 spent shell casings and observed bullet holes from the exterior of the residence into the home (specifically, a bedroom). Detective Truss interviewed the alleged victim's neighbor, who reported that he heard gunshots on the date in question, and upon exiting his residence, saw [Nesbitt] standing in the victim's back yard with a gun. Detective Truss left the interview with the victim's neighbor to secure a photo line-up, and while returning to the neighbor's house to present the photo line-up, observed [Nesbitt] standing on the corner of the street where the incident occurred. When an attempt was made to approach [Nesbitt] and take him into custody, [Nesbitt] fled and was subsequently apprehended."

Nesbitt appealed to the Court of Criminal Appeals, which affirmed the circuit court's judgment in an unpublished memorandum decision.

Before the Court of Criminal Appeals, Nesbitt's sole contention on appeal was that the circuit court had erred in revoking Nesbitt's probation because, he argued, the sole evidence connecting him to the alleged crime of discharging a firearm into an occupied building was hearsay evidence. In addressing that argument, the Court of Criminal Appeals noted that, although hearsay evidence may be admitted during probation-revocation proceedings, hearsay evidence cannot form the sole basis for the revocation of probation. See Killeen v. State, 28 So. 3d 823,

8

824 (Ala. Crim. App. 2009) ("'"Hearsay evidence may be admitted in the discretion of the court, though the State acknowledges that hearsay evidence cannot be the sole support of revoking probation."'" (citations omitted)). The Court of Criminal Appeals, in its unpublished memorandum decision, stated:

> "In this case, the circuit court relied on both hearsay and nonhearsay evidence in determining that Nesbitt had violated the terms and conditions of his probation. Detective Truss testified that Murrell's neighbor, Drake, told him that, after hearing the gunshots, he went outside and saw Nesbitt standing in his backyard, on the other side of the fence from Murrell's house, holding a gun. Drake identified Nesbitt from a photo template as the man he saw in his backyard holding a gun immediately after the shooting. Murrell told Det. Truss that one of his sons had 'some kind of issue' with Nesbitt that may have led to the shooting. … During his investigation following the shooting, Det. Truss observed several bullet holes in Murrell's house and collected spent shell casings in the back corner of Murrell's yard and Drake's yard. Detective Truss found the shell casings in the exact same location that Drake had reported seeing Nesbitt hold a gun immediately following the shooting. Detective Truss testified that Nesbitt ran when police approached him after the shooting and that Nesbitt lied when he initially gave a statement to police. In a statement in open court, Nesbitt indicated knowledge of the circumstances surrounding the shooting. Even though Nesbitt denied shooting the gun, the credibility of his statement was for the circuit court to assess. See Sams [v. State, 48 So. 3d 665 (Ala. 2010)].

> "The evidence, both hearsay and nonhearsay, was sufficient for the circuit court to be reasonably satisfied that Nesbitt violated the terms and conditions of his probation by

9

committing the new offense of shooting into an occupied building. Accordingly, the circuit court did not err when it revoked Nesbitt's probation."

Discussion

As noted above, this Court granted certiorari review to consider whether the Court of Criminal Appeals' unpublished memorandum decision is in conflict with Ex parte Dunn, supra. In Ex parte Dunn, a probationer's probation officer filed a delinquency report alleging that the probationer had violated the terms of his probation by, among other things, "committing the new offense of third-degree robbery ...." 163 So. 3d at 1003. This Court set forth the following relevant facts:

> "The trial court held a probation-revocation hearing at which the State presented testimony from two witnesses: Matthew Shirey, a detective with the Mobile Police Department, and Donna Gibbons, a DNA analyst with the Alabama Department of Forensic Sciences. Detective Shirey testified that he was assigned to investigate a burglary at Alec Olensky's residence that occurred on January 1, 2012. Two men, Robert Hager and James Weaver, were detained when Sgt. Alford caught them running from Olensky's residence and getting into a vehicle. Olensky's television, but not the rest of the missing property, was found in the vehicle. Detective Shirey testified that, during an interview with Sgt. Alford, Hager and Weaver implicated [the probationer] and Jacob Wheeler in the burglary. Detective Shirey also testified that blood was found in Olensky's residence and that Cpl. Taylor was assigned to take pictures and to collect evidence at the scene. Detective Shirey presented three photographs

10

submitted by Cpl. Taylor that depicted a broken window and blood inside Olensky's residence.

"Next, Gibbons testified for the State regarding DNA results of blood samples taken at the scene and from a pair of pants Gibbons testified were marked as 'clothing that was found discarded with [the] stolen property next door from the scene.' Gibbons testified that the blood from the pants was a match for [the probationer's] DNA. Gibbons stated that the pants had been collected by Officer James McKinley. The trial court asked Gibbons if [the probationer] was also a match for the bloodstains inside the residence, and Gibbons testified that those bloodstains were from a different individual.

"The court questioned Detective Shirey regarding where the pants had been found, but Detective Shirey testified that he did not know and that it was Officer McKinley who had recovered the pants. Officer McKinley did not testify at the probation-revocation hearing.

"The trial court revoked [the probationer's] probation, stating that, based on the evidence, the trial court was 'reasonably satisfied that [the probationer] violated the terms and conditions of his probation in that he participated in a burglary that took place on or about January 1, 2012.'"

163 So. 3d at 1003-04 (footnote omitted). The probationer appealed to the Court of Criminal Appeals, which affirmed the trial court's revocation of his probation. This Court granted the probationer's petition seeking certiorari review.

Before this Court, the probationer in Ex parte Dunn argued that the trial court had erred in revoking his probation because, he said, "'the

11

only evidence connecting the clothing to the burglary for which [the probationer's] probation was sought to be revoked was hearsay.'" 163 So. 3d at 1004. In considering that argument, this Court set forth the following applicable law:

> "'"It is not necessary in a probation revocation hearing to provide proof beyond a reasonable doubt or by a preponderance of the evidence. Rather, the lower court need only be 'reasonably satisfied from the evidence that the probationer has violated the conditions of his probation.'"' [Goodgain v. State,] 755 So. 2d [591,] 592 [(Ala. Crim. App. 1999)] (quoting Mitchell v. State, 462 So. 2d 740, 742 (Ala. Crim. App. 1984), quoting in turn Armstrong v. State, 294 Ala. 100, 103, 312 So. 2d 620, 623 (1975)). However, the Court of Criminal Appeals also stated: '[H]earsay evidence may not form the sole basis for revoking an individual's probation.... "The use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating information that forms the basis of the revocation."' 755 So. 2d at 592 (quoting Clayton v. State, 669 So. 2d 220, 222 (Ala. Crim. App. 1995))."

163 So. 3d at 1005.

This Court then provided the following analysis:

> "Here, the State acknowledges that it 'relied on hearsay evidence' in the revocation hearing, but it argues that 'it corroborated the hearsay evidence when it relied on nonhearsay evidence -- Gibbons's testimony regarding the testing that she performed on the blood sample that ultimately matched [the probationer's] profile that was stored in a database containing DNA profiles from felons and misdemeanors throughout the state.' State's brief, at 11.

However, the State provided no nonhearsay evidence, from Gibbons or anyone else, as to where the pants from which the blood sample was taken were found or connecting those pants to the robbery. Gibbons testified that the evidence-submission form indicated that 'there was clothing that was found discarded along with [Olensky's] stolen property next door from the scene,' but she had no personal knowledge of that discovery. Detective Shirey testified that Officer McKinley had found the pants, but Detective Shirey had no personal knowledge as to where they had been found. No testimony from Officer McKinley was offered at the revocation hearing. Thus, … the only evidence connecting [the probationer] to the alleged commission of the robbery was hearsay evidence."

163 So. 3d at 1005-06. This Court reversed the Court of Criminal

Appeals' decision, explaining that

"the State has not corroborated by nonhearsay evidence the hearsay evidence connecting the pants, and by extension [the probationer], to the burglary. Thus, … 'the State failed to present any evidence, other than the hearsay testimony of Detective [Shirey], indicating that [the probationer] had, in fact, committed the alleged [burglary],' [Goodgain v. State,] 755 So. 2d [591,] 593 [(Ala. Crim. App. 1999)] …."

Id. at 1006.[1]

_____

[1]In Walker v. State, 294 So. 3d 825, 832 (Ala. Crim. App. 2019), the Court of Criminal Appeals provided the following explanation of this Court's holding in Ex parte Dunn:

"Recently, in Ex parte Dunn, 163 So. 3d 1003 (Ala. 2014), the Supreme Court refined this standard, explaining that, when the State presents a mixture of hearsay and nonhearsay evidence to show that a defendant violated his probation by committing a new offense, the circuit court

13

In the present case, Nesbitt alleges that the Court of Criminal Appeals' decision is in conflict with Ex parte Dunn because, Nesbitt argues, the State, which presented a mixture of hearsay and nonhearsay evidence, failed to present sufficient nonhearsay evidence connecting Nesbitt to the alleged defense. Nesbitt is correct. At the probation-revocation hearing, the nonhearsay evidence presented by the State was the portion of Det. Truss's testimony indicating the following: 1) that he had observed several bullet holes in the exterior walls of Murrell's house

cannot revoke a defendant's probation for that violation unless the nonhearsay evidence connects the defendant to the alleged offense. In that case, the Supreme Court reversed this Court's decision upholding the circuit court's revocation of [the probationer's] probation for committing a new offense because 'the State [had] not corroborated by nonhearsay evidence the hearsay evidence connecting the pants, and by extension [the probationer], to the burglary.' 163 So. 3d at 1006. See also Wright v. State, 292 So. 3d 1136, 1139 (Ala. Crim. App. 2019) (reversing the circuit court's revocation of [a probationer's] probation for committing a new offense because the nonhearsay evidence that [the probationer] was merely present at a party at the time a shooting occurred did not sufficiently connect him to the alleged murder); and Miller v. State, 273 So. 3d 921, 925 (Ala. Crim. App. 2018) (reversing the circuit court's revocation of [a probationer's] probation because 'the State failed to present any nonhearsay evidence indicating that [the probationer] had, in fact, committed the alleged arson')."

and that he had recovered several shell casings from "the far back corner of the backyard on the fence line," some of which were in Murrell's backyard and some of which were over the fence in Drake's backyard; 2) that, on the day after the shooting, Nesbitt had run away from Det. Truss and another officer as they had approached Nesbitt; and 3) that Nesbitt had initially lied to Det. Truss during Det. Truss's interview of Nesbitt concerning Nesbitt's whereabouts on the day in question.[2] The nonhearsay evidence outside of Det. Truss's testimony was the statement that Nesbitt himself had made in his defense during the probation-revocation hearing, in which he stated that "[t]his 16, 17 year old, they know what's going on. They know when you don't pay drug debts or you don't pay this, people shoot your house up. That occur. But Nesbitt didn't do it."[3] That nonhearsay evidence does not connect Nesbitt to the alleged offense of discharging a firearm into an occupied building.

---

[2]We note that the State describes Det. Truss's testimony relaying what Nesbitt had said during the interview as nonhearsay testimony, and Nesbitt does not argue before this Court that the State's characterization of that portion of Det. Truss's testimony as nonhearsay evidence is incorrect. Given that the issue is not in dispute between the parties, we will consider it as nonhearsay evidence.

[3]The State makes an argument that that statement of Nesbitt's is a confession that he discharged a firearm into an occupied building. We

The State cites authority indicating "that in criminal cases the flight or attempted flight of a defendant is a circumstance which the jury may take into consideration in determining guilt." Pierce v. State, 51 Ala. App. 166, 168, 283 So. 2d 618, 619-20 (Crim. App. 1973). The State also argues that Nesbitt's lying to the police may be considered as nonhearsay evidence indicating Nesbitt's consciousness of guilt. We agree that evidence of Nesbitt's fleeing from and lying to the police is admissible as consciousness-of-guilt evidence. In Fuller v. State, 34 Ala. App. 211, 215, 39 So. 2d 24, 27-28 (1948), the Court of Appeals of Alabama stated, in pertinent part:

> "As stated by Chief Justice Brickell in McAdory v. State, 62 Ala. 154 [(1878)]:
>
> > "'Any indications of a consciousness of guilt by a person suspected of or charged with crime, or who may after such indications be suspected or charged, are admissible evidence against him. The number of such indications it is impossible to limit, nor can their nature or character be defined. Presumptions or inferences may be, and often are, founded on circumstances which, of themselves, independent of the accusation, would not be ground of crimination. It is largely a question of fact, rather than a question of law, for the

do not read Nesbitt's statement as an admission of guilt. In fact, Nesbitt specifically stated that he did not discharge a firearm into Murrell's house.

> determination of the jury, whether particular conduct, or particular expressions of the accused, refer to a criminal offense, and spring from his consciousness of guilt. When it is clear that they have no relation to the offense, and that they ought not to have any influence with the jury, it is the duty of the court to reject them as evidence. But however minute or insignificant they may be, shedding but a dim light upon the transaction, if they have a tendency to elucidate it they must be admitted. They may be connected with other circumstances which will constitute a chain of evidence, leading the mind to a satisfactory conclusion.' (Italics ours.)"

However, even though there is Alabama authority to support the State's general assertion that evidence of Nesbitt's fleeing from and initially lying to the police may be admitted as consciousness-of-guilt evidence, it has failed to provide any discussion or analysis as to how that is sufficient nonhearsay evidence to connect Nesbitt to the alleged crime in this case. In Ex parte Jones, 541 So. 2d 1052, 1054 (Ala. 1989), this Court stated that "Alabama cases clearly hold that evidence of flight that is not combined with other criminative circumstances has little probative force. Levinson [v. State, 54 Ala. 520, 527 (1875)]." The State did not present any evidence indicating that Nesbitt's fleeing from the police the day after the shooting had occurred was connected to that particular crime; they presented evidence only of the fact that Nesbitt had fled. The State

has not provided any authority or analysis indicating that general consciousness-of-guilt evidence, such as that presented in this case, can serve as the sole nonhearsay evidence connecting Nesbitt to the alleged crime. The fact remains that the State has not presented nonhearsay evidence connecting Nesbitt to the offense of discharging a firearm into an occupied building.

The only evidence that actually connects Nesbitt to the alleged offense was the hearsay evidence offered by the State, which primarily consists of Det. Truss's testimony recounting what Murrell and Drake -- neither of whom testified at Nesbitt's probation-revocation hearing -- had told him during the course of his investigation. According to Det. Truss's testimony, Murrell had told Det. Truss that one of Murrell's sons had had "some kind of issue with [Nesbitt]," which may have led to the shooting. According to Det. Truss's testimony, Drake had told Det. Truss that, immediately following the shooting, he had seen Nesbitt standing with a handgun in his hand at the same location where Det. Truss later collected the spent shell casings. Detective Truss also testified that Drake had been able to identify Nesbitt based on a photo of Nesbitt that Det. Truss had presented to Drake. That hearsay evidence is the only evidence that

18

connects Nesbitt to the alleged offense of discharging a firearm into an occupied building.

The relevant nonhearsay evidence presented by the State does not connect Nesbitt to the alleged offense of discharging a firearm into an occupied building. The only evidence that actually connects Nesbitt to the alleged offense is the hearsay evidence in Det. Truss's testimony. Accordingly, we conclude that Nesbitt has established a conflict between the Court of Criminal Appeals' decision below and Ex parte Dunn.

## Conclusion

Based on the foregoing, we conclude that the Court of Criminal Appeals' decision affirming the circuit court's revocation of Nesbitt's probation is in conflict with Ex parte Dunn. Therefore, the judgment of the Court of Criminal Appeals is reversed; the revocation of Nesbitt's probation was improper. On remand, the Court of Criminal Appeals shall remand this cause to the circuit court for any further necessary proceedings.

REVERSED AND REMANDED.

Parker, C.J., and Sellers, Mendheim, Stewart, and Cook, JJ., concur.

Shaw, Wise, and Bryan, JJ., dissent.

Mitchell, J., dissents, with opinion.

MITCHELL, Justice (dissenting).

The Montgomery Circuit Court entered a judgment revoking Larry Edward Nesbitt's probation after he was accused of discharging a firearm into an occupied building. The Court of Criminal Appeals affirmed that judgment. This Court now concludes that those courts erred because, it says, the State failed to present any <u>nonhearsay</u> evidence connecting Nesbitt to the shooting. I respectfully disagree.

At Nesbitt's probation-revocation hearing, the nonhearsay evidence presented by the State included testimony from a police detective indicating (1) that Nesbitt had fled when he was approached by the detective "around the corner" from the shooting the next day and (2) that, after he was caught, Nesbitt had told the detective that he had been "at work all day" the previous day, before later admitting that he actually had been in the neighborhood when the shooting occurred.

In my view, the detective's testimony circumstantially connected Nesbitt to the shooting. First, Nesbitt's flight from the police was evidence that the trial court could "take into consideration" in determining whether he had committed a new crime. <u>Pierce v. State</u>, 51 Ala. App. 166, 168, 283 So. 2d 618, 620 (Crim. App. 1973). This would be

21

true even if "several days ha[d] passed since the commission of the crime," id., but it's especially notable here because Nesbitt's flight came only one day after the shooting, when he was approached by police "around the corner" from where it had taken place. Second, the lie Nesbitt admitted telling the detective was not about some unrelated matter. To the contrary, it concerned an alibi and his whereabouts at the time of the shooting -- and the giving of a false alibi is evidence of consciousness of guilt. See Hill v. State, 366 So. 2d 318, 325 (Ala. 1979).

To be sure, this evidence was circumstantial. But "'[c]ircumstantial evidence is not inferior to direct evidence,' and 'is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.'" Wilder v. State, [Ms. CR-2023-0324, May 3, 2024] ___ So. 3d ___, ___ (Ala. Crim. App. 2024) (citations omitted). If circumstantial evidence can be sufficient to support a criminal conviction, then surely a court may conclude that circumstantial evidence sufficiently connects a probationer to a new offense in a probation-revocation proceeding, where the burden of proof is lighter and the formality and evidentiary standards of a criminal trial are not required. See Hall v. State, 681 So. 2d 247, 248 (Ala. Crim. App.

22

1995) (distinguishing between criminal trials and probation-revocation hearings).

Here, the State presented both hearsay evidence directly connecting Nesbitt to the shooting and nonhearsay evidence circumstantially doing the same. The trial court considered all of that evidence and was "reasonably satisfied" that Nesbitt had violated the conditions of his probation. See Ex parte Dunn, 163 So. 3d 1003, 1005 (Ala. 2014). I believe that this evidence supports the trial court's decision to revoke Nesbitt's probation and that the Court of Criminal Appeals correctly affirmed that decision.